IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN T. KIRSCH,                                        No. C 05-03010 MJJ

       Plaintiff,

  v.

JAVIER A. CUADRA, *et al.*,

       Defendants.
_____/

Pending before the Court is Defendant Jere Ross's (aka Jerry Ross) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #5). Plaintiff Steven Kirsch has filed an Opposition (Doc. #22), and Defendant Ross has filed a Reply (Doc. #32). For the following reasons, the Court grants Defendant Ross's Motion.

I.    Background

On January 25, 2005, Plaintiff filed a Complaint in California Superior Court against Javier A. Caudra, Camelot Promotions, LLC, and various Doe defendants, alleging that the defendants violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] (Doc. #1, ex. 1 "Complaint.") Specifically, Plaintiff alleges that, beginning on April 4, 2004, the defendants sent 18 unsolicited advertisements to his facsimile line. (Compl. at ¶¶ 9, 11.) Based on this conduct, Plaintiff

---

[1] The TCPA provides a private right of action against any person who "use[s] any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C).

seeks $41,000 in damages, $82,000 in trebled statutory damages,[2] an injunction prohibiting the defendants from engaging in the alleged conduct, and an award of attorneys' fees and costs. (*Id.* at 6.) At some point after Plaintiff filed his Complaint, the Superior Court entered default against Defendants Javier Caudra and Camelot Promotions, LLC. Subsequently, on June 23, 2005, Plaintiff amended his Complaint to substitute Defendant Ross for Defendant Doe 1. On July 25, 2005, Defendant Ross removed the case to this Court on the basis of federal question and diversity jurisdiction.[3] (Doc. #1.) He now moves to dismiss the Complaint on the ground that this Court lacks jurisdiction over him.

II.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. As the party seeking to invoke the federal court's jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the Court rules on the motion based on written materials without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Id.* In such cases, the Court examines whether the plaintiff's pleadings and affidavits contain sufficient factual allegations to make a *prima facie* showing of personal jurisdiction. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (internal citations omitted). In reviewing the written materials, the Court resolves factual conflicts in the parties' affidavits in the plaintiff's favor. *AT&T*, 94 F.3d at 588.

---

[2]Plaintiff indicates that he seeks the $82,000 *in addition to* the $41,000. (Compl. at 6.)

[3]Defendant Ross removed this case on the basis of both federal question and diversity jurisdiction. However, the FTCPA expressly vests jurisdiction over private causes of action under the Act exclusively in state courts. 47 U.S.C. § 227(b)(3). Nevertheless, because Plaintiff and Defendant Ross are citizens of different states, and Plaintiff has alleged an excess of $75,000 in damages, diversity jurisdiction exists. *See* 28 U.S.C. § 1332(a); *Kopff v. Wold Research Group, LLC*, 298 F. Supp. 2d 50, 55 (D. D.C. 2003); *Kinder v. Citibank*, No. 99-CV-2500, 2000 WL 1409762, at *3 (S.D. Cal. Sept. 13, 2000) (nothing in the TCPA precludes federal courts from hearing private TCPA when requirements for diversity jurisdiction are satisfied).

2

Generally, A district court sitting in diversity has personal jurisdiction to the extent provided by the law of the forum state. *Data Disc., Inc.*, 557 F.2d at 1286. California's jurisdictional statute[4] is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards collapse into one, and the Court considers only whether the exercise of jurisdiction over the defendant comports with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Specifically, to satisfy constitutional due process, the non-resident defendant "must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on the defendant's contacts with California, the Court may exercise either general or specific jurisdiction. Because Plaintiff has not presented any argument in support of general jurisdiction over Defendant Ross in this action, the Court limits its analysis to determining whether specific jurisdiction exists.

"A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V.*, 284 F.3d at 1123. The Court applies a three-part test when assessing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987); *Bancroft & Masters, Inc.*, 223 F.3d at 1086 (9th Cir. 2000). The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff fails under either prong, the Court must find that personal jurisdiction does not exist in the forum state. *Id.* If the plaintiff satisfies both prongs, the burden shifts to the defendant

---

[4] Cal. Code Civ. Pro. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.")

3

1  to "present a compelling case" demonstrating that the exercise of jurisdiction would be unreasonable.
2  *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 276-78 (1985)).

3  III.    Discussion

4          A.    Defendant Ross's Motion

5          Defendant Ross contends that the Court must dismiss Plaintiff's Complaint because the Court lacks personal jurisdiction over him. Specifically, he argues that Plaintiff has not and cannot make a *prima facie* showing of jurisdiction. In support of his Motion, Defendant Ross has filed a Declaration. (Doc. #7.) The following statements are taken from his Declaration.

          Defendant Ross is a United States citizen and a resident of Florida. He is an attorney licensed to practice law in Florida, and is a name shareholder in the Tampa law firm of Bush Ross, P.A. The law firm's only office is in Tampa; it has never maintained an office in California. Neither Defendant Ross, nor any member of his law firm, is licensed to practice in California. Defendant Ross has never represented a client with primary business interests in California and has not had any personal business interests in California. Defendant Ross does not own any real property in California.

          The last time Defendant Ross visited California was in 1998, for recreational purposes. Before that trip, Defendant Ross had visited California several times for depositions in a federal securities case in the 1980's, a vacation in the 1970's, several recreational trips in the 1960's, and a three-month stay at Camp Pendleton in 1962, during which time he was a lieutenant in the United States Marine Corps.

          Defendant Ross avers that he has "no acquaintance or affiliation with either [Defendant Cuadra or Defendant Camelot Promotions, LLC] nor any knowledge of their existence other than in connection with this legal action by plaintiff." He states that they are not clients of Bush Ross, and that neither Bush Ross nor any of its employees has ever served as an agent or employee for either of the named defendants.

          Defendant Ross further avers that neither he, nor any member or employee of his law firm sent any of the alleged facsimiles to Plaintiff; participated in or discussed with anyone else the sending of such facsimiles; or was aware that any of the alleged facsimiles were sent to Plaintiff.

          Finally, Defendant Ross states that he has never met Plaintiff, whether in California or

4

elsewhere. He states that his only communications with Plaintiff has been by phone and email, and that Plaintiff initiated these contacts while Defendant Ross was at his Tampa office. He indicates that these contacts involved Plaintiff's inquiries about Defendant Ross's knowledge of Concorde America, Inc., certain persons appearing to have a relationship to that entity, and its responses to unusual volume in the public trading of shares of its capital stock in August 2004. Defendant Ross avers that neither he, nor his law firm, ever marketed, offered for sale, or sold any product or service in California via facsimile transmission. He also states that, because he is subject to the jurisdiction of the state and federal courts of Florida, he will voluntarily appear in the court in Florida if the Court dismisses this case and Plaintiff re-files in Florida.

  B. Plaintiff's Opposition and Supporting Declarations

In response, Plaintiff maintains that he has alleged sufficient facts connecting Defendant Ross to the fax transmissions that form the basis of his Complaint. Particularly, Plaintiff argues that he has pled adequate facts establishing that Defendant Ross had the requisite minimum contacts to provide a basis for this Court to exercise specific jurisdiction over him. (Opp. at 10.)

Looking first at Plaintiff's Complaint, Plaintiff alleges, in pertinent part:

> 9. Beginning before or about April 4, 2004, defendants engaged in a campaign to market and sell their products in the State of California. Specifically, defendants sent facsimiles containing advertisements of the commercial availability or quality of their property, goods, and/or services, without the recipients' prior express invitation or permission, to facsimile machines in California.
>
> . . .
>
> 11. Defendants sent eighteen such facsimiles to a facsimile line owned by plaintiff.
>
> . . .
>
> 15. [] None of the eighteen faxes that are the subject of this litigation complied with [the requirements in C.F.R. § 68.318(d).]
>
> . . .
>
> 17. Plaintiff is informed and believes that, with respect to each violation, each defendant had actual notice of participation, or a high degree of involvement, in a plan to violate the [Telephone Consumer Protection Act] by, for example, knowing that the transmitted faxes were unlawful advertisements, by participating in preparing their content, by providing or obtaining the fax telephone number of plaintiff or other recipients, by knowing that plaintiff or other recipients had not

5

>authorized the faxes' transmission by prior express invitation or permission, and/or by failing to stop the sending of the faxes.
>
>. . .
>
>19. Plaintiff is informed and believes, and on that basis alleges, that defendants' foregoing actions constitute part of a pattern and practice by defendants of sending unsolicited facsimiles containing unsolicited advertisements to facsimile machines in California.

(Doc. #1, ex. 1.)

Additionally, as part of his Opposition to Defendant Ross's Motion, Plaintiff has submitted his Declaration (Doc. #24), and a Declaration from his counsel, John Brown (Doc. #23). In his Declaration, Plaintiff states as follows. Plaintiff received at his facsimile machine in California 18 advertisements promoting the stocks TWTN ("Twister Networks, Inc."), BDYS ("Body Scan Technologies"), AHFI ("Absolute Health & Fitness, Inc."), and CNDD ("Concorde America, Inc."). Plaintiff avers that each of the 18 faxes was a fraudulent stock tout, and that he later obtained information indicating that each was sent as part of a "pump and dump" scheme. Upon receiving the faxes, Plaintiff called a number listed on two of the faxes and learned that the name of the service that took his call was "MyFaxOnDemand." Plaintiff asked who was paying for the listed stock advertisement and was informed that it was Defendant Javier Cuadra of Camelot Promotions, LLC.

Plaintiff states that 7 of the 18 faxes referred to the website www.winningstockpicks.net, where the recipient could access a full report on the stock described in the fax. Plaintiff called Mr. Cuadra and asked if he had heard of the website, to which Mr. Cuarda responded that he had. Plaintiff then accessed the website and learned that Tom Heysek was the website's editor. After locating Mr. Heysek, Plaintiff filed a lawsuit against him for sending the 18 faxes. Plaintiff states that the winningstockpicks.net website listed Vault Studios as the creator of a video in which Mr. Heysek interviewed a person purporting to be the C.E.O. of Absolute Health & Fitness, Inc., which was a company in three of the faxes. Plaintiff then spoke with Jon Paulson of Vault Studios, who informed Plaintiff that the video was directed by three people: Tom Heysek, Bryan Kos, and Paul Spreadbury. Mr. Paulson also informed Plaintiff that Vault Studios was paid by a law firm for its work on the video.

Plaintiff states that he thereafter contacted Mr. Spreadbury, who told Plaintiff that he had done some work for the website and that he had been paid by a law firm. During a later conversation,

1  Plaintiff asked Mr. Spreadbury who paid for the video publicizing Absolute Health. Mr. Spreadbury
2  responded that the law firm Bush, Ross, Gardner, Warren & Rudy[5] paid for his work.

3  Plaintiff states that he later saw a press release issued on August 2, 2004 by
4  www.uspennystocks.com,[6] stating that it had hired Fry/Hammond/Barr to create a multi-media
5  campaign. Plaintiff contacted Fry/Hammond/Barr and spoke to Janette Estep, who confirmed that
6  Fry/Hammond/Barr had been hired to produce television advertisements for uspennystocks.com.
7  Plaintiff asked Ms. Estep who had paid for the advertisements, and she responded that she could not
8  release that information without a subpoena. Plaintiff then subpoenaed documents from
9  Fry/Hammond/Barr relating to uspennystocks.com. He states that he received a record indicating that
10 Fry/Hammond/Barr was paid $336,000 by Bush, Ross, Garder, Warren & Rudy, from SunTrust Bank
11 account #41001143506 for their work on the television ads.

12 In August 2004, Plaintiff learned that Hartley Lord was the founder and President of Concorde
13 America, one of the companies advertised in the faxes. Plaintiff contacted Mr. Lord and asked about
14 Concorde's stock promotions. Mr. Lord told Plaintiff that he was represented by Defendant Ross. He
15 further told Plaintiff that he had met Defendant Ross after Donald Oehmke, the owner of Ventana
16 Consultants, had offered to buy stock from Mr. Lord and recommended that his attorney, Defendant
17 Ross, handle the transaction.

18 Plaintiff states that "[a]s of August 12, 2004, [he] had obtained information that Ross was
19 involved with the scheme," and that he called Defendant Ross at his law firm to get more information
20 about "the scheme". Plaintiff avers that Defendant Ross stated that he was associated with Bryan Kos,
21 and that Ventana Consultants (which Mr. Lord had indicated was run by Mr. Oehmke), was one of his
22 clients. Plaintiff states that he mentioned to Defendant Ross that he believed that the faxes were part
23 of a pump and dump scheme, and Mr. Ross agreed. Plaintiff states that Defendant Ross also indicated
24 that he had written a press release for Concorde dated August 10, that stated two prior press releases
25 dated July 28 and August 9 "hyping" Concorde stock were fraudulent and that Concorde disclaimed any

---

[5]The Court assumes that this is the predecessor to Bush Ross, P.A.

[6]According to Plaintiff, uspennystocks.com was an affiliate of winningstockpicks.net.

7

involvement in the composition or dissemination of the earlier press releases.[7]

Plaintiff states that he again called Defendant Ross at his law firm's phone number. Plaintiff states that he asked the person who answered the phone whether any of the law firm partners represented Mr. Kos, who Plaintiff claims was involved in the pump and dump scheme. Plaintiff states that the receptionist told him that Defendant Ross "was the point person to contact at the law firm regarding Bryan Kos." Plaintiff also avers that Defendant Ross indicated in email correspondence that he had provided legal services to two corporations in which Mr. Kos had involvement, and that he provides representation to a corporation that Mr. Oehmke owns.

Plaintiff indicates that on February 15, 2005 the Securities and Exchange Commission filed a Complaint in the United States District Court for the Southern District of Florida against persons and entities it alleged were involved with the pump and dump scheme that Plaintiff believes included the faxes he received. Plaintiff states that Concorde, Absolute Health, Mr. Lord, Mr. Oehmke, Mr. Kos, Mr. Heysek, Andrew Kline, and Mr. Spreadbury are named as defendants in that action. Plaintiff indicates that the May 31, 2005 Joint Scheduling Report states that Defendant Ross represents Mr. Lord and Concorde in the SEC action. Plaintiff also states that Exhibit 1 to the SEC's Complaint is a Declaration from an SEC staff accountant, Timothy J. Galdencio. Plaintiff explains that in the Declaration Mr. Galdencio states that the profits from some of the stock trades that the SEC was investigating (which Plaintiff claims were of the same stock that was advertised in the 18 faxes he received) went into the Bush, Ross, Gardner, Warren & Rudy SunTrust Bank account #41001143506, and totaled $5,307,741.

Plaintiff further declares that, when he was attempting to collect on his judgments against Mr. Heysek, Plaintiff asked him how much he received for the writeups of the stocks advertised in the faxes. Mr. Heysek responded that he was paid approximately $20,000 a month for his writeups. Plaintiff states that he thereafter subpoenaed Mr. Heysek's bank records as well as bank records from Asian American Capital, a company which Mr. Heysek headed. Plaintiff avers that he obtained a record showing that Asian American Capital received payments from the Bush, Ross, Gardner, Warren & Rudy SunTrust Bank account $41001143506. Specifically, he states that Heysek received $24,000 on August 3, 2004,

---

[7] Plaintiff states that Mr. Spreadbury had prepared these releases and that Bush, Ross, Gardner, Warren & Rudy had paid for them.

8

1  and $23,000 on July 7, 2004 from that account. Plaintiff states that he "immediately suspected that these
2  payments were for [Mr.] Heysek's writeups of the touted stocks, because [Mr.] Heysek had previously
3  told [him] that he was being paid about $20,000 a month for the writeups."

4  Plaintiff has also submitted the Declaration of his attorney in this matter, John Brown. In his
5  Declaration, Mr. Brown states, "[Plaintiff] has for some time had [] evidence that [Defendant] Ross
6  retained Camelot to retain a California company, Fax.com, to send some of the junk faxes." He
7  indicates that he subpoenaed statements from SunTrust Bank, all statements for bank accounts held by
8  Camelot Promotions, LLC, during the months of June through August 2004, in an effort to identify the
9  persons that hired Camelot to send the faxes. He states that SunTrust's records showed that six of the
10 seven largest dollar figure wire transfers totaling $355,000, came from Bush, Ross, Gardner, Warren
11 & Rudy's SunTrust Bank account #41001143506. Based on this information, Mr. Brown states that he
12 concluded that "Camelot, a penny-ante company with little cash flow, was laundering very large
13 amounts of money to fund a junk faxing operation directed by the persons that were paying it for the
14 faxes, including Jeremy Ross." He further states that he attempted to contact Defendant Ross and his
15 counsel to get information about the faxes, but Defendant Ross refused to provide any information in
16 response.

C.   Plaintiff's *Prima Facie* Case

As detailed above, to survive Defendant Ross's Motion, Plaintiff need only make a *prima facie* showing of jurisdiction. Because Plaintiff has not argued that general jurisdiction exists, the Court must examine whether it has specific jurisdiction over Defendant Ross in this matter.

A.   Purposeful Availment or Purposeful Direction

To support a finding that specific jurisdiction exists, Plaintiff must initially demonstrate that Defendant Ross either purposefully availed himself of the privilege of conducting activities in California, or purposefully directed his activities toward California. *Burger King Corp.*, 471 U.S. at 476-78; *Lake*, 817 F.2d at 1421. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract here." *Schwarzenegger*, 374 F.3d at 802. In this way, a defendant "purposefully avails itself of the privilege of conducting activities in the forum [s]tate,

9

1  thus invoking the benefits and privileges of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

3  Alternatively, "[a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum[.]" *Schwarzenegger*, 374 F.3d at 803.  The Court assesses purposeful direction under the tripartite effects test set forth in *Calder v. Jones* 465 U.S. 783, 788-90 (1984).  Under this test, the plaintiff must prove that the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Examining Plaintiff's Complaint and supporting Declarations, the Court finds that Plaintiff has failed to allege sufficient facts to satisfy his burden under either a purposeful availment or purposeful direction theory.

12  Starting with Plaintiff's Complaint, as the excerpt set forth above illustrates, Plaintiff has not made any allegations as to Defendant Ross's conduct, specifically.  Rather, Plaintiff alleges that the defendants, generally, violated the FTCPA by sending 18 faxes to him containing unsolicited advertisements.  These conclusory statements, while adequate to state a claim under Rule 8(a), are insufficient to sustain a finding that Defendant Ross either purposefully availed himself of the privilege of conducting activities in California, or committed an intentional act aimed at California. *See Dever v. Hetzen Coastings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004) (conclusory allegations in complaint are insufficient to establish minimum contacts). The Court therefore turns to Plaintiff's Declarations.

20  Although Plaintiff has set forth a detailed account of the purported events underlying his lawsuit, Plaintiff nevertheless fails to identify any conduct by Defendant Ross that would support a finding that Defendant Ross had the requisite minimum contacts with California.  At most, Plaintiff has alleged that Defendant Ross represents certain people and entities who Plaintiff claims were responsible for the faxes he received.  However, none of people or entities are defendants in this action.  Furthermore, the Court fails to see how Defendant Ross's legal representation of Florida clients, in Florida, demonstrates an intent to avail himself of the privilege of conducting business in California, or amounts to an intentional act directed at California.

28  Plaintiff also argues that "based on the documents he received pursuant to subpoena . . . Ross

10

1  paid for the junk faxes at issue." This assertion, however, lacks any support in either of Plaintiff's
2  Declarations. Specifically, both Plaintiff and Mr. Brown aver that the money transfers were from Bush,
3  Ross, Gardner, Warren & Rudy SunTrust Bank account #41001143506. While Defendant Ross may
4  be a partner of this firm, the fact that the funds were transferred from the firm account does not
5  constitute conduct by Plaintiff. Indeed, Plaintiff has not alleged that this was Defendant Ross's personal
6  account or that Defendant Ross directed or authorized the transfers. More importantly, even accepting
7  Plaintiff's statement as true, the Court fails to see how this act of transferring funds demonstrates
8  purposeful contact with California.[8]

9  Plaintiff also contends that under the TCPA, "one like Ross who directed the actual fax sender
10 to press the button to send the fax is ultimately responsible for the legal violations." Again, neither
11 Plaintiff's Complaint, nor his supporting Declarations contain any allegations to support this charge.[9]
12 Particularly, Plaintiff has failed to cite to any specific statement or allegation, and the Court has found
13 none, either directly stating, or from which the Court could infer, that Defendant Ross directed someone
14 to send the 18 faxes Plaintiff received.

15 Further, Plaintiff has failed to proffer any statements in either his Complaint or Declarations
16 contradicting several critical statements in Defendant Ross's Declaration. In his Declaration, Defendant
17 Ross avers that he does not have any personal or business contacts with California; that he does not
18 know Defendants Cuadra or Camelot Promotions; and that neither he, nor any member of his firm sent,
19 directed another to send, or was aware of any of the offending faxes. Even in light of the detailed
20 account Plaintiff provides in his Declaration, Defendant Ross's statements remain uncontroverted. More

---

[8] Moreover, Plaintiff has not alleged any specific facts indicating that these transfers were linked to the faxes his received.

[9] In his Opposition, Plaintiff cites several cases in support of the proposition that a single act, such as sending an email, to a recipient in the forum state may be sufficient to support specific jurisdiction over the sender. (*See* Opp. at 14-15.) While this principle of law may be correct, Plaintiff has failed to allege facts demonstrating that Defendant Ross engaged in such conduct. Likewise, Plaintiff cites authority recognizing that a non-resident defendant may be subject to personal jurisdiction based on acts of a local agent. (*See* Opp. at 15-16.) Again, the Court does not disagree with this proposition, but finds that Plaintiff has failed to allege adequate facts showing that Defendant Ross directed any agent to send faxes such that he may be subject to this Court's jurisdiction. Although he argues that "Ross, or Camelot on behalf of Ross, retained a California firm, Fax.com, to deliver the faxes, so Ross is subject to California jurisdiction," neither the Complaint, nor Plaintiff's supporting Declarations contain specific facts substantiating this theory.

11

United States District Court
For the Northern District of California

importantly, these facts support the finding that Defendant Ross has neither availed himself of the privilege of doing business in California, nor committed an intentional act aimed at, and causing harm in, California.

In sum, Plaintiff has failed to allege sufficient facts demonstrating that Defendant Ross either purposefully availed himself of the privilege of conducting activities in California or purposefully directed conduct toward California. Because Plaintiff has failed to make this threshold showing necessary to establish specific jurisdiction, he cannot make a *prima facie* showing that personal jurisdiction exists. Consequently, the Court finds that it lacks jurisdiction over Defendant Ross in this matter.

D.   Conclusion

For the reasons stated above, the Court **GRANTS** Defendant Ross's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #5).

**IT IS SO ORDERED.**

Dated:   October 20, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE